UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VISALUS, INC.,

                Plaintiff,

   v.                                  Case No. 13-10631

KODY SMITH,                       HON. TERRENCE G. BERG
                                     HON. R. STEVEN WHALEN

                Defendants.

_____/

## ORDER DENYING DEFENDANT'S
## MOTION TO DISMISS AND MOTION TO TRANSFER

This matter is before the Court on Defendant Kody Smith's February 20, 2013 motion to dismiss for lack of personal jurisdiction or for improper venue, and his alternative motion to transfer the matter to the United States District Court for the District of Colorado. The parties have fully briefed the motion, and oral argument was heard on April 10, 2013.

The Court finds that Defendant has submitted to the jurisdiction of this Court and has agreed it is a proper venue for this dispute, for those reasons, and the reasons more fully set forth below, it is ORDERED that Defendant's motion to dismiss and his alternative motion to transfer (Dkt. 10) are DENIED.[1]

---

[1] The Court is aware that the Honorable Judge Victoria A. Roberts has recently issued an order granting a motion to dismiss in a somewhat similar case brought by ViSalus. *ViSalus, Inc. v. Bohn*, No. 13-10366, (E.D. Mich. April 24, 2013), Dkt. 16. This Court has closely reviewed and considered Judge Roberts's order and it is clear that the facts in the two cases are materially different, particularly as to the method of and allegations concerning the contracting process. Because of these distinguishing facts, a different result in this case is not inconsistent with the order in *Bohn*.

## I.   FACTUAL BACKGROUND

Plaintiff ViSalus, Inc., is a Troy, Michigan, based LLC incorporated in the state of Delaware. Compl. ¶ 2, Dkt. 1. The company markets weight-management products, nutritional supplements, and energy drinks. Compl. ¶ 7. It appears the company's primary method of sales is a "multi-level marketing" or "network marketing" practice where sales are made by myriad independent contractors who sell to their friends and acquaintances and, importantly, recruit others to serve as ViSalus distributors as well. Compl. ¶¶ 7, 9. Each independent-contractor distributor is compensated both for his own sales as well as for the sales of those he has recruited, continuing like a pyramid. This recruited sales-force is referred to as the participant's "downline," and can provide multiple levels of compensation. Compl. ¶¶ 9, 21.

Defendant Kody Smith is a resident of Colorado and was a very successful distributor of ViSalus products, with a substantial "downline" of more than 700 distributors. Compl. ¶ 16. It is undisputed that Defendant has never been to Michigan. Smith Decl. ¶ 4. Plaintiff alleges that sometime around January 2013, Mr. Smith stopped selling ViSalus products and became a distributor of Ocean Avenue products. Compl. ¶¶ 26–29. Plaintiff alleges that Ocean Avenue is in direct competition with ViSalus. Compl. ¶ 26.

Plaintiff's claims against Defendant are for breach of contract and tortious interference with business relationships, premised on the allegation that Defendant solicited ViSalus distributors to join him in selling Ocean Avenue products, in

2

violation of two agreements between the parties. Compl. ¶¶ 26–32. Defendant's successful solicitation of Plaintiff's distributors has allegedly caused Plaintiff damages in excess of $75,000, primarily through lost sales. Compl. ¶ 4.

Plaintiff identifies the two agreements at issue as the "Distributor Agreement" and the "IP Agreement," both of which contain clauses prohibiting the distributor, for one year, from soliciting or recruiting ViSalus employees or distributors to participate in any other "network marketing program." Compl. ¶¶ 18–25, Ex. A and Ex. B. It appears both of these agreements were in the form of point-and-click agreements, where Defendant allegedly agreed to be bound by their contents by clicking an "I have read and agree to the Terms and Conditions" button while registering online to be a ViSalus distributor. Compl. ¶¶ 18–25; Pl.'s Resp. Opp'n 5, Dkt. 15; Le Gall Decl. ¶ 4, Dkt. 15-1. While Defendant initially argued that Plaintiff's allegations regarding the acceptance of the agreement were deficient (Def.'s Mot. Dismiss 5–6, Dkt. 10), he does not offer an affirmative denial of or rebuttal to Plaintiff's explanation of the acceptance of the agreement (Dkts. 15, 15-1, 15-2).

The two agreements also contain a forum-selection clause designating Michigan courts—both state and federal—as the exclusive forum for dispute resolution, and a choice-of-law clause designating Michigan law as the law to be applied. Compl. Ex. A at 10, Ex. B ¶ 19.

On February 14, 2013, Plaintiff brought this suit against Defendant. Defendant now moves to dismiss the case on two grounds, (1) lack of personal jurisdiction

under Federal Rule of Civil Procedure 12(b)(2) and (2) improper venue under Federal Rule of Civil Procedure 12(b)(3). If his motion to dismiss fails, he alternatively moves for transfer to the United States District Court for the District of Colorado under 28 U.S.C. § 1404(a).

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss for Lack of Personal Jurisdiction.

Federal Rule of Civil Procedure 12(b)(2) authorizes the filing of motions to dismiss for lack of personal jurisdiction. When "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). "The court has discretion to select which method it will follow, and will only be reversed for abuse of that discretion." *Id.*

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing the existence of personal jurisdiction. *See Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). In the face of a properly supported motion for dismissal, the "plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *E & M Props. v. Razorgator, Inc.*, No. 08-CV-10377, 2008 WL 1837261, at *2 (E.D. Mich. Apr. 23, 2008) (quoting *Theunissen*, 935 F.2d at

4

1458). Because the Court has not conducted an evidentiary hearing, it will construe the facts in the light most favorable to Plaintiff and may not consider conflicting facts offered by Defendant. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Further, in the absence of an evidentiary hearing, "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen*, 935 F.2d at 1458.

In a diversity case such as this, the Court looks to the law of the forum state to determine whether personal jurisdiction exists. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

Lastly, Defendant may waive objection to personal jurisdiction, and courts will generally enforce waivers made by agreement. *See Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 721 (6th Cir. 2006); *see also Carnival Cruise Lines v. Shute*, 499 U.S. 585, 590–95 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 8–20 (1972).

## B.  Motion to Dismiss for Improper Venue.

In a diversity action, venue must be proper under 28 U.S.C. § 1391(a), which creates proper venue in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). "This includes any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).

For venue to be improper, it must be that no substantial part of the events giving rise to this claim occurred in the Eastern District of Michigan. *See* 28 U.S.C. § 1391(a)(2). Further, § 1391(a)(2) "does not require venue in the district with the most substantial contacts to the dispute. Rather, it is sufficient that a substantial part of the events occurred in the challenge venue, even if a greater part of the events occurred elsewhere." *See Amphion Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d. 943, 946 (E.D. Mich. 2003) (quoting *Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 352 (S.D.N.Y. 2003)).

Lastly, as with personal jurisdiction, Defendant may waive objection to venue, and courts will generally enforce waivers made by agreement. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 590–95 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 8–20 (1972); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939).

## C.   Motion to Transfer Under 28 U.S.C. § 1404(a).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "To obtain a transfer of venue, the moving party has the burden of showing 'that the balance of convenience . . . strongly favor[s] [the transfer].'" *Crestmark Fin. Corp. v. OMO Sci., Energy, and Tech., Inc.*, 10-CV-11795, 2010 WL 3702371, at *2 (E.D.

Mich. Sept. 16, 2010) (quoting *Comshare, Inc. v. Execucom Systems Corp.*, 593 F.

Supp. 981, 985 (E.D. Mich. 1984)). The district court deciding a § 1404(a) motion to

transfer has broad discretion to grant or deny the motion. *See Phelps v. McClellan*,

30 F.3d 658, 663 (6th Cir. 1994). The movant must first show that the action could

have been brought in the proposed transferee district. *See Amphion*, 285 F. Supp.

2d 943, 946 (E.D. Mich. 2003). The Court must then evaluate whether a transfer

would "promote the interests of justice" and "serve the parties' and witnesses'

convenience." *Id.* Specific factors that courts have considered in making the

"interest of justice" and "convenience" determinations include:

> "(1) the convenience of witnesses; (2) the location of relevant
> documents and relevant relative ease of access to sources of proof;
> (3) the convenience of the parties; (4) the locus of the operative
> facts; (5) the availability of process to compel the attendance of
> unwilling witnesses; (6) the relative means of the parties; (7) the
> forum's familiarity with the governing law; (8) the weight accorded
> the plaintiff's choice of forum; and (9) trial efficiency and the
> interests of justice, based on the totality of the circumstances."

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (quoting *Pilates,*

*Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 182–83 (S.D.N.Y. 1995)).

## III.   ANALYSIS

### A.    Motion to Dismiss for Lack of Personal Jurisdiction.

Defendant's motion to dismiss for lack of personal jurisdiction is denied. The

Court finds, in considering the facts alleged in the Complaint (Dkt. 1) and the

declarations (Dkts. 10-1, 15-1, 15-2, 18-1), and the statements and arguments

provided by the parties in the motion papers (Dkts. 10, 15, 18), that Mr. Smith

consented to the jurisdiction of this Court.

It is well settled that personal jurisdiction may be waived, and that waivers of the requirement by an agreed forum-selection clause are generally enforced by courts. *See Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 721 (6th Cir. 2006). "The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." *Id.*

Defendant has offered two arguments for why the forum-selection clauses in the "Distributor Agreement" and the "IP Agreement" are not valid: (a) Plaintiff did not allege that an "express condition precedent" of the agreements was met; and (b) the clauses are invalid under the governing Michigan law. Both of these arguments fail, as explained below.

1.   The "express condition precedent" was met.

In the brief supporting his motion, Defendant argues that "[t]he documents containing the forum selection clauses are not signed or initiated [sic] by Smith" and that "Plaintiff does not allege that Smith signed the documents containing the forum selection clauses, or that it ever asked him to do so." Def.'s Mot. Dismiss 5, Dkt. 10. Defendant frames his argument as if the documents were provided to him only after he formally accepted Plaintiff's offer and therefore the documents could not define the agreed terms of the offer. Def.'s Mot. Dismiss 5–6.[2] In accordance

---

[2] Defendant's arguments as to the effect of the forum-selection clause are limited to the two addressed above. He has not directly argued that the agreements are invalid as contracts. Defendant is of course free to argue later in this litigation that the agreements are invalid under contract law. But for the purposes of this Order, under the applicable legal standards, the agreements are presumed to be valid as Plaintiff has alleged all required elements of contract formation, including offer and acceptance, and counsel for Defendant acknowledged at oral argument that the alleged

with this position, Defendant argues that this presentation of the documents makes it such that the "express condition precedent" that the agreements must be "received and accepted by ViSalus" was not and could not have been fulfilled. *Id.*

This argument is unpersuasive. While the allegations in the complaint could certainly be clearer, they are sufficient. *See* Fed. R. Civ. P. 8; *see also, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff's recitation of the facts includes discussion of the agreements, their contents, and a plain statement that Defendant "agreed to various conditions on his right to operate as a distributor, including a non-solicitation provision in each of the Agreements." Compl. ¶¶18–25. Plaintiff provides further detail on the process of agreement in the declarations of Eileen Le Gall. Ms. Le Gall states that Defendant registered "online" to be a ViSalus distributor, and that Defendant did and must have "accepted and agreed to . . . specific acknowledgements and agreements, which comprised the Independent Distributor Terms of Agreement and IP Terms of Agreements." Le Gall Decl. ¶ 4, Dkt. 15-1. Defendant, like all those who register online with Plaintiff, "indicated [his] acceptance of the non-solicitation provision and other terms by clicking the appropriate checkbox next to a statement that read: 'I have read and agree to the Terms and Conditions.'" *Id.*

Defendant did not offer in his reply brief a denial or any form of rebuttal to the explanation of the contracting process provided by Plaintiff in its response brief and Ms. Le Gall's declaration. At oral argument, however, counsel for Defendant argued

---

"clicking" of the "I agree" button "would be sufficient to make a contract under whatever the terms are to which you are agreeing that you have read . . . ."

that these statements in the declarations do not clearly indicate what exactly the terms and conditions provided during the online registration process were, and thus the allegations are insufficient to indicate that Defendant agreed to the two agreements at issue.[3] Again, while the statements from Plaintiff could certainly be clearer, this Court finds that the statements are clear enough to indicate that the two agreements at issue—those provided as Exhibits A and B to the Complaint— are those Defendant allegedly agreed to upon registration to be a ViSalus distributor. Le Gall Decl. ¶ 4; Compl. ¶¶ 18–20. Most significantly, the capitalized titles for the agreements referred to in Ms. Le Gall's declaration (¶4) are exactly the same as those provided in the Complaint (¶¶ 18–20). When that fact is coupled with the fact that those two agreements are the only two agreements discussed at any length in the Complaint, declarations, and moving papers, it is quite clear that Plaintiff's allegation is that they are indeed the same agreements, an allegation Defendant has not denied.

As for the "condition precedent" that Plaintiff must have "received" and "accepted" the agreements before they could become binding, that condition has clearly been met. Construing the facts in the light most favorable to the Plaintiff, as the Court must at this stage, when Defendant registered online he agreed to the agreements at issue and submitted that registration to Plaintiff. As the acceptance of that registration information was the trigger that started Defendant's

_____

[3] Defendant did not, however, deny or otherwise attempt to refute the allegation that he registered online and that he clicked the "I have read and agree to the Terms and Conditions" button.

relationship with Plaintiff, and was the basis for the parties' approximately 16-month business relationship, it clearly occurred. Le Gall Decl. ¶ 5.[4]

    2.  The forum-selection clauses are enforceable under Michigan law.[5]

The state of Michigan has codified law indicating when certain forum-selection clauses will be enforced. The applicable statute provides, in pertinent part:

> (2) If the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if all the following occur: (a) [t]he court has power under the law of this state to entertain the action[;] (b) [t]his state is a reasonably convenient place for the trial of the action[;] (c) [t]he agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means[;] [and] (d) [t]he defendant is served with process as provided by court rules.

Mich. Comp. Laws Ann. § 600.745 (West).[6] Defendant argues that the second factor, (b) above, is not met, and thus the forum-selection clause is not enforceable. Def.'s Mot. Dismiss 7, Dkt. 10. There is apparently no argument as to the satisfaction of the other three factors.

---

[4] Even if Plaintiff somehow did not "receive" and "accept" the agreements, Plaintiff could likely waive that condition on the validity of the agreements. *See* 13 Williston on Contracts § 39:24 (4th ed.); *Bliss v. Carter*, 182 N.W.2d 54 (Mich. Ct. App. 1970).

[5] The Parties both contend that Michigan law applies to this question and agree that the Court should apply the factors developed in *Cray v. Gen. Motors Corp.*, 207 N.W.2d 393, 396 (Mich. 1973) in evaluating whether Michigan is a reasonably convenient forum.

[6] The parties have apparently assumed that the statute controls in this case, as the Michigan Court of Appeals did, apparently without discussion or express decision, in *Lease Acceptance Corp. v. Adams*, 724 N.W.2d 724 (Mich. Ct. App. 2006). The plain text of the statute makes it applicable only when the parties agree that disputes "may" be brought in Michigan, and does not address the circumstance where the parties agree that disputes *shall* be brought in Michigan if they are to be brought at all. Comparing 600.745(2) with (3) shows that the legislature recognized that forum-selection agreements could be either exclusive or nonexclusive. For the purpose of this order, this Court will assume, without deciding, that the statute is applicable here.

In determining whether a state is a "reasonably convenient place for the trial of the action," Michigan courts consider the "*Cray*" factors:

1. The private interest of the litigant.
   a. Availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses;
   b. Ease of access to sources of proof;
   c. Distance from the situs of the accident or incident which gave rise to the litigation;
   d. Enforcibility [sic] of any judgment obtained;
   e. Possible harassment of either party;
   f. Other practical problems which contribute to the ease, expense and expedition of the trial;
   g. Possibility of viewing the premises.
2. Matters of public interest.
   a. Administrative difficulties which may arise in an area which may not be present in the area of origin;
   b. Consideration of the state law which must govern the case;
   c. People who are concerned by the proceeding.
3. Reasonable promptness in raising . . . forum non conveniens.

*Radeljak v. Daimlerchrysler Corp.*, 719 N.W.2d 40, 43 (Mich. 2006) (citing *Cray v. Gen. Motors Corp.*, 207 N.W.2d 393, 396 (Mich. 1973)). The Michigan courts have also made it clear, however, that the *Cray* factors are for application of the common-law doctrine of forum non conveniens, and are neither mandatory nor exclusive in the determination of reasonable convenience under MCL 600.745(2), but rather are simply a "useful framework to assist trial courts in deciding [the] issue." *Lease Acceptance Corp. v. Adams*, 724 N.W.2d 724, 736 n.13 (Mich. Ct. App. 2006).

Addressing the factors as listed above, the Court finds that the following factors suggest that Michigan is *not* a "reasonably convenient" place for trial of this matter: *(1)(a)*, as most of the potentially unwilling witnesses are outside of the

12

subpoena power of this Court (Def.'s Mot. Dismiss 8), but the cost of obtaining willing witnesses is likely to be similar were this matter to be tried elsewhere rather than here (Def.'s Mot. Dismiss 9; Pl.'s Resp. Opp'n 10); and *(1)(c)*, as those other distributors allegedly solicited by Defendant are all located elsewhere (Def.'s Mot. Dismiss 9; Pl.'s Resp. Opp'n 10).

The following factors suggest that Michigan *is* a "reasonably convenient" place for the trial: *(1)(b)*, as sources of proof, other than certain witnesses, are, on whole, just as easily accessed from Michigan as elsewhere (Pl.'s Resp. Opp'n 9–10); *(1)(d)*, as any judgment obtained should be easily enforceable (*id.* at 10); *(1)(e)*, while Defendant argues harassment of a sort, his argument is wholly unsupported (Def.'s Mot. Dismiss 9; Pl.'s Resp. Opp'n 10); *(1)(f)*, as no such "other practical problems" have been identified;[7] *(1)(g)*, as there is no relevant premises to view; *(2)(a)*, as no "administrative difficulties" have been identified; *(2)(b)*, as the parties have chosen Michigan law as the law that should apply;[8] and *(2)(c)*, as there is strong public-interest in a Michigan-based company and the enforceability of forum-selection and choice-of-law clauses choosing Michigan as a forum or as a source of law, and there are numerous persons directly concerned with the proceeding in Michigan, including those affiliated with ViSalus.

---

[7] Both parties address the cost of transportation of willing witnesses under this factor, but those costs are more appropriately, and have been, considered under factor (1)(a).

[8] Factor (2)(b) will be discussed in greater detail because the parties provided extensive argument on the question of whether the choice-of-law clause is valid under Michigan law. The Court finds that the choice-of-law clause is valid, for the reasons explained above.

Factor (3) is not relevant to this case as there is no dispute that the issue was raised promptly.

Regarding Factor 2(b), the parties disagree sharply on the question whether the choice-of-law provision is valid under Michigan law. The clause is valid. As both parties noted, Michigan addresses that question by applying the approach set forth in the Restatement (Second) of Conflict of Laws § 187.[9] *See, e.g.*, *Chrysler Corp. v. Skyline Indus. Servs.*, 528 N.W.2d 698, 703–04 (1995). Although section 187(1) appears to resolve the issue presented by this case, the Michigan courts have apparently determined that 187(2)(a) and (b) are exceptions to 187(1). *See id.* Therefore, turning to those exceptions, this Court will consider Defendant's argument that the exception of 187(2)(b) applies. Even applying this exception, the agreement is nevertheless valid under section 187(2)(b) because Colorado cannot be

---

[9]  Section 187 of the Restatement (Second) of Conflict of Laws provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Restatement (Second) of Conflict of Laws § 187 (1971)

said to have  a "materially greater interest" than Michigan. Defendant's argument
that Colorado's interest is materially greater is a bare statement without support.
Defendant cites to two cases in discussing the issue, one is an unreported case from
the District of Colorado, the other is a case from the United States Court of Appeals
for the Tenth Circuit, and both are plainly distinguishable on their face.[10] Which
state has the greater interest is perhaps debatable, but it is clear that Colorado's
interest is not "materially greater," as can be seen by the review of the *Cray* factors
performed above. *See, e.g., Chrysler Corp.*, 528 N.W.2d at 704–07.

Lastly, even if Colorado's interest were materially greater, application of
Michigan law would not be contrary to a "fundamental policy" of Colorado.
Defendant's argument that Colorado Revised Statute § 8-2-113 prohibits the type of
nonsolicitation agreement at issue in this case (Def.'s Mot. Dismiss 11 n.5) is
creative but unpersuasive. The Court agrees with Plaintiff that the nonsolicitation
provision at issue here is much closer to a restriction on soliciting co-employees
than it is to a restriction on soliciting customers (Def.'s Resp. Opp'n 11). *C.f. Atmel
Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 794 (Colo. Ct. App. 2001).

As can be seen from the consideration of the factors above, including the location
of Plaintiff and numerous witnesses in Michigan, the easy accessibility of electronic

---

[10] In *King v. PA Consulting Group*, 485 F.3d 577 (10th Cir. 2007), the case was transferred from a
state where the Defendant organization was incorporated, but not, importantly, where it was
headquartered. ViSalus's connection to Michigan is much stronger than PA Consulting Group's
connection to New Jersey, as Michigan is not only the place of ViSalus's headquarters but is also the
home of the vast majority, if not all, of the company's management.
   In *Haggard v. Spine*, 09-CV-00721, 2009 U.S. Dist. LEXIS 54818 (D. Colo. June 12, 2009), an
unreported case, the Defendant was found to have a substantial presence in Colorado, the Plaintiff's
home state, whose interests were being weighed against another state's whose law was agreed on in
the choice-of-law clause.  Unlike in the *Spine* case, ViSalus does not have a heavy presence in
Colorado.

15

and physical evidence, the agreed selection of Michigan law as the applicable law, and the lack of any other state where it would be perfectly convenient given the witnesses located in other states, Michigan is a reasonably convenient place for trial.[11]

## B.    Motion to Dismiss for Improper Venue.

Defendant's motion to dismiss for improper venue is denied. The Court finds, in considering the facts alleged in the Complaint (Dkt. 1) and the declarations (Dkts. 10-1, 15-1, 15-2, 18-1), and the statements and arguments provided by the parties in the motion papers (Dkts. 10, 15, 18), that Defendant consented to venue in this Court.

As with personal jurisdiction, Defendant may waive objection to venue, and courts will generally enforce waivers made by agreement. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 590–95 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 8–20 (1972); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939); *Catz v. Chalker*, 142 F.3d 279, 284–85 (6th Cir. 1998), *am. on denial of reh'g*, 243 F.3d 234 (6th Cir. 2001). The forum-selection clause, which the Court has found

---

[11] Defendant's argument that the "binding Michigan Supreme Court decision" in *Lease Acceptance Corp. v. Abel*, 767 N.W.2d 656 (Mich. 2009) supports his position is unavailing. The only determination the Court made in that case was that the trial court did not abuse its discretion in finding that Michigan was not a reasonably convenient place for trial. It did not find, or even suggest, that the trial court would have erred by making the opposite finding, or that the intermediate court of appeals was necessarily wrong in finding Michigan a reasonably convenient place for trial. *Id.* at 657. The trial court's finding, and the Michigan Supreme Court's finding that the trial court did not abuse its discretion, are relatively valueless as precedent on this question because the trial court's reasoning and considerations are not known.

If it were true, as Defendant argues, that "[h]ere, as in *Abel*, Michigan is neither a 'logical' nor 'well-suited' forum to try a Colorado defendant accused of breaching a contract in Colorado that he signed and performed in Colorado," Def.'s Reply 3, Dkt. 18, it would make forum-selection clauses unenforceable in nearly all cases except those where they are not even necessary for personal jurisdiction—the exception would swallow the rule.

to be enforceable for the purpose of deciding Defendant's motion (*see supra* Analysis Part A), is a valid waiver of the requirement of proper venue.

## C.      Alternative Motion for Transfer.

Having declined to grant Defendant's motion to dismiss, the Court now considers Defendant's alternative motion to transfer this matter to the District of Colorado under 28 U.S.C. § 1404(a). For the reasons stated below, the alternative motion is denied.

The following three requirements must be met before the Court will transfer an action under § 1404(a): "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). It is undisputed that this action could have been brought in the District of Colorado, so the only two criteria at issue are whether transfer would serve the interest of justice and would be in the convenience of the witnesses and parties.

Of the nine factors this Court considers in making this determination (*see supra* Part II.C), the following factors support transfer to the District of Colorado: "the locus of the operative facts," as most of those acts occurred in Colorado; "the availability of process to compel the attendance of unwilling witnesses," as more potentially unwilling witnesses are outside the subpoena power of this Court than are outside the subpoena power of the United States District Court for the District

17

of Colorado; and "the relative means of the parties," as Plaintiff is a company that employs hundreds of people while Defendant is a natural person.

The following factors are neutral: "the convenience of witnesses," as some witnesses are in Colorado, others are in Michigan, and one or two are in Texas and Alabama; "the location of relevant documents and relevant relative ease of access to sources of proof," as that evidence is likely just as easily accessed in Michigan as in Colorado; and "the convenience of the parties," as Colorado is more convenient to Defendant, but Michigan is more convenient to Plaintiff.

The following factors support keeping the matter in Michigan: "the forum's familiarity with the governing law," as Michigan law is the selected law; "the weight accorded the plaintiff's choice of forum," as Plaintiff chose this forum; and "trial efficiency and the interests of justice, based on the totality of the circumstances," as the parties agreed on this forum.

"Where a valid forum-selection clause was entered into by the parties, it should ordinarily be given controlling weight." *Applied Energy Techs., Inc. v. Solar Liberty Energy Sys.*, No. 09-CV-11959, 2009 U.S. Dist. LEXIS 76977, at *15 (E.D. Mich. Aug. 27, 2009) (citing *Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214, 218 (E.D. Mich. 1992)); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988). Forum-selection clauses are "prima facie valid" and are to be enforced "unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Detroit Coke Corp.* , 794 F. Supp. at 217 (citing *Moses v. Bus. Card Express, Inc.* 929 F.2d 1131, 1136 (6th Cir. 1991)) (internal quotation marks

18

4:13-cv-10631-TGB-RSW   Doc # 19   Filed 05/17/13   Pg 19 of 20   Pg ID 295

omitted). While forum-selection clauses are not dispositive to the question of transfer under § 1404(a), *Stewart Org.*, 487 U.S. at 23, they do raise the bar the moving party must clear for a successful motion.

"Defendant bears the burden to show that a venue transfer is appropriate, but 'mere assertions or speculation, without evidence, are insufficient to meet this burden.'" *A&D Tech., Inc. v. C.E.E., LLC*, No. 09-CV-11662, 2009 U.S. Dist. LEXIS 69572, at *25 (E.D. Mich. Aug. 10, 2009) (quoting *IFL Grp. v. World Wide Flight Servs.*, 306 F. Supp. 2d 709, 714 (E.D. Mich. 2004)). "The burden is a heavy one, and requires the moving party to show that the balance of factors weighs strongly in favor of transfer." *Id.* (citing *Steelcase, Inc. v. Smart Techs, Inc.*, 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004)).

Considering all of the relevant factors, the Court finds that even absent the forum-selection clause Michigan would be at least an equally convenient venue as is Colorado. When factoring in that the parties chose Michigan as the proper forum, Defendant falls far short of showing that "the balance of factors weighs strongly in favor of transfer."

## CONCLUSION

Accordingly, it is ORDERED that Defendant's motion to dismiss and his alternative motion to transfer to the United States District Court for the District of Colorado (Dkt. 10) are DENIED.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  May 17, 2013

**Certificate of Service**

I hereby certify that this Order was electronically submitted on May 17, 2013, using the CM/ECF system, which will send notification to each party.

By: <u>s/A. Chubb</u>
      Case Manager